OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1898.

*( Continued from Volume 147.)*

JAMES v. MUTUAL RESERVE FUND LIFE ASSOCIATION,
Appellant.

**Division One, February 15, 1899.***

1. **Practice:** PLEA OF PERFORMANCE OF CONTRACT: PROOF OF WAIVER.
Under a plea of performance of the conditions of an insurance
policy as to the payment of premiums within the prescribed time,
the plaintiff can prove a waiver of the conditions.

2. ———: ———: ———: BURDEN: RIGHT TO OPEN AND CLOSE. And
under such plea the burden is on the plaintiff to establish such
waiver, and hence he has the right to open and close the case.

*NOTE.—Decided December 8, 1898. Motion for rehearing filed; rehearing denied February 15, 1899.

VOL. 148 mo—1 (1)

James v. Mut. Reserve Fund Life Ass'n.

3. **Waiver:** FORFEITURE: BY AGENT: INSURANCE POLICY: CASE STATED. Where an insurance policy provides that premiums shall be paid on or before a prescribed time, and if not so paid it shall be void, and the receipts for the premiums paid provided in their face that they should not be valid unless countersigned by the agent at Kansas City, and the policy was negotiated and issued by the agent at Kansas City, and all the premiums were paid to him, and all the dealings of the insured and the beneficiary were with him, he became the *alter ego* of the company, and he had power to waive a forfeiture of the policy if the premiums were not paid on exact time, or otherwise to alter, waive, rescind or vary the whole or any provision of the policy, notwithstanding the policy provided that "no contract, alteration or discharge of contract, waiver of forfeiture, nor granting of permits or credits, shall be valid, unless the same shall be in writing, signed by the president or vice-president and one other officer of the association."

4. ———: ———: ———: ———: PAYMENT OF PREMIUMS. The prompt payment of premiums due on a life insurance policy may be waived or suspended by the company or its agent in express terms or by its course of dealing with the insured.

5. ———: ———: ONE ACT. But one act of waiving a forfeiture is not sufficient to constitute a course of conduct.

6. ———: ———: ———: COUPLED WITH OTHER EVIDENCE. But where such single act stands admitted, and plaintiff's uncontradicted testimony is that there were a number of other such belated payments and waivers of forfeiture, it will be held that they constituted such a course of conduct as to induce the insured and beneficiary to believe that a failure of strict payment would not prejudice their rights.

7. **Practice:** JUDGMENT: REVERSAL: INSUFFICIENCY OF EVIDENCE. It is not enough to justify a reversal that there is an insufficiency of evidence; it must appear that there is no evidence tending to establish the fact found by the jury. And the fact that the verdict is not such as the appellate court would have reached upon the conflicting evidence adduced, will not warrant a reversal.

8. ———: ———: ———: ———: PRIMA FACIE CASE. The appellate court, in determining whether the evidence is sufficient to support a verdict for the plaintiff, will, laying aside the defendant's controverting evidence, assume that plaintiff's evidence is true, and give to it every favorable inference which may be reasonably and fairly drawn from it.

9. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE: MISAPPREHEN-
SION OF THE LAW. Where the losing party supports his motion
for a new trial by affidavit reciting evidence which he could by the
exercise of diligence, have produced at the trial, and alleges as his
reason for doing so a misapprehension of the law governing the
case, in this, that he did not expect proof of waiver of the condi-
tions of the contract would be admitted under a plea of perform-
ance, and he made no claim of surprise by the ruling of the court
admitting such proof under the plea, and made no effort to get
the case postponed until he could obtain this evidence, the new
trial was properly denied.

10. ———: CONSTITUTIONAL QUESTIONS: WAIVER. If the protection
of the Constitution with respect to the rule as to proof of waiver
in insurance cases, was not invoked in the trial court, it can not
be raised on appeal.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER,
Judge.

AFFIRMED.

WM. C. & JAS. C. JONES, WASH. ADAMS and GEORGE
BURNHAM, JR., for appellant.

(1) The defendant should have been permitted to open
and close the case. St. Louis Tow. Co. v. Ins. Co., 52 Mo.
529; Reithmuller v. Fire Ass'n, 38 Mo. App. 129; Hazell v.
Bank, 95 Mo. 60; Gaus v. Magee, 42 Mo. App. 307; Porter
v. Jones, 52 Mo. 399; Harvey v. Sullen, 56 Mo. 372; Benoist
v. Murrin, 58 Mo. 307; Bates v. Forcht, 89 Mo. 121; Mc-
Hale v. Oertel, 15 Mo. App. 583; Cravens v. Faulkner, 28
Mo. 19. (2) The evidence offered to prove that defendant
had not required prompt payment of earlier assessments
should have been excluded. The purpose of this evidence
was to show that plaintiff had waived prompt payment of the
earlier assessments, and therefore should not be permitted
to insist on prompt payment of the June call. Under given
conditions such "course of conduct" might create an estoppel
(or waiver), but whether estoppel or waiver was thereby

created, facts relied upon should have been pleaded. Murphy v. Ins. Co., 70 Mo. App. 78; McNees v. Ins. Co., 61 Mo. App. 341; Kyle v. Ins. Co., 11 Mo. 291; Russell v. Ins. Co., 55 Mo. 593; McCullough v. Ins. Co., 113 Mo. 606; Bayse v. Ambrose, 32 Mo. 484; Pier v. Heinrichoffen, 52 Mo. 333; Travis v. Ins. Co., 32 Mo. App. 198; Roy v. Boteler, 40 Mo. App. 213; Okey v. Ins. Co., 29 Mo. App. 110; Lanitz v. King, 93 Mo. 518; Nichols v. Larkin, 79 Mo. 271; Bank v. Hatch, 78 Mo. 24; Mahoney v. Reed, 40 Mo. App. 99; Bray v. Marshall, 75 Mo. 327; Hanley v. Ass'n, 4 Mo. App. 253. (3) The acts shown do not establish, or tend to establish waiver. If they tend to establish anything (and this we deny), they tend to establish estoppel, and estoppel (i. e., the facts constituting estoppel), if relied on, must be pleaded. Miller v. Anderson, 19 Mo. App. 71; Weise v. Moore, 22 Mo. App. 530; Hammerslough v. Cheatham, 84 Mo. 13; Bray v. Marshall, 75 Mo. 327; Stones v. Richmond, 21 Mo. App. 17; Noble v. Blount, 77 Mo. 235; Meyer v. Knickerbocker, 73 N. Y. 516; Ins. Co. v. Tullidge, 39 Ohio St. 240; Ins. Co. v. Pattker, 33 Ohio St. 459; Meyer v. Ins. Co., 73 N. Y. 516; Day v. Ins. Co., 45 Conn. 480. (4) It was clearly shown that the June payment was not paid or tendered until after the time limited for payment (i. e. June 30), had expired, and the demurrer to the evidence should have been sustained, or the case reversed on appeal. Reichenbach v. Ellerbe, 115 Mo. 588; Gaterman v. Ins. Co., 1 Mo. App. 300; Survick v. Valley Ass'n, 25 Ins. L. J. 380; Scheele v. Society, 63 Mo. App. 277; Klein v. Ins. Co., 104 U. S. 88; Wheeler v. Ins. Co., 82 N. Y. 543; Yoe v. Ass'n, 63 Md. 86; Hawkshaw v. Kofh, 29 Fed. Rep. 770; Sup. Lodge v. Keener, 26 Ins. L. J. 413; Ins. Co. v. Strathorng, 3 U. S. 24; Am. Br. Co. v. Talbot, 141 Mo. 674. (a) The evidence offered to show waiver of prompt payment of assessments (even if admissible under the pleadings) was wholly insufficient to establish

waiver, even if defendant were chargeable with the knowl-
edge and acts of those not shown to be its agents.   Reichen-
bach v. Ellerbe, 115 Mo. 588; Richards v. Ins. Co., 68 Mo.
App. 585; Chadwick v. Triple Alliance, 56 Mo. App. 463;
French v. Hartford L. & A. Co., 27 Ins. L. J. 331; Harvey
v. Grand Lodge, 50 Mo. App. 472; Crossman v. Mass. Ben.
Co., 143 Mass. 435; State ex rel. v. Ben. Soc., 42 Mo. App.
489; Scheele v. Society, 63 Mo. App. 277; Gaterman v. Ins.
Co., 1 Mo. App. 300; Borgraffe v. Sup. Lodge, 22 Mo. App.
140; Smith v. New England Co., 63 Fed. Rep. 772; Barnes
v. Continental, 30 Mo. App. 539; Easely v. Valley Ass'n,
91 Va. 162.   (b)   The acts relied on were not acts of the
defendant—the agency of Eames and Miss Dewey was not
shown; the extent of their authority was not shown; *per
contra* they were shown not to be defendant's agents and
their authority, if any had been shown, was limited by the
contract.   Lyon v. Soc., 153 Mass. 83; Smith v. New Eng-
land Co., 63 Fed. Rep. 772; Swett v. Ins. Co., 78 Me. 541;
Williams v. Ins. Co., 89 Me. 165; West End Co. v. F. I. Co.,
25 Ins. L. J. 857; Sullivan v. Ins. Co., 25 Ins. L. J. 412;
Jenkins v. Ins. Co., 58 Mo. App. 212; McCullom v. Ins. Co.,
65 Mo. App. 304; Ins. Co. v. Wolff, 95 U. S. 326; Burbank
v. Ass'n, 144 Mass. 437; McCoy v. Ins. Co., 152 Mass. 272.
(c)   The evidence of plaintiff and of witness Larimer, as to
payments to and conversations with the elder Eames and
Miss Dewey, should have been withdrawn from the jury by
instruction.   Ins. Co. v. Garzbac, 48 Neb. 827; Ins. Co. v.
Humphrey, 62 Ark. 348; Furnas v. Franklin, 6 Neb. 429;
Mechem on Agency, sec. 186; Hamilton v. Ins. Co., 15 Mo.
App. 59; Stavinow v. Ins. Co., 43 Mo. App. 517; McCullom
v. Ins. Co., 65 Mo. App. 310; Titus v. Railroad, 46 N. J.
Law, 393.   (5)   The court should have given the defendant
a new trial upon the showing made in the affidavits filed in
support of its motion therefor.   Mayor v. Burns, 114 Mo.
426; Rickroad v. Martin, 43 Mo. App. 597; James v. Hicks,
58 Mo. App. 521.

LIPSCOMB & RUST for respondent.

(1) The law does not favor forfeitures, and slight circumstances are enough to show a waiver. Hawthorn v. Ins. Co., 5 Mo. App. 73. (2) It was not necessary to plead the waiver in this case. Ins. Co. v. Kyle, 11 Mo. 27; McCullough v. Ins. Co., 113 Mo. 616; Schmidt v. Ins. Co., 2 Mo. App. 339; Stewart v. Supreme Council, 36 Mo. App. 319. The rule applies to cases like the present, where the waiver applies to matters occurring before the loss as in this case, as well as when it applies to matters subsequent to the loss, like furnishing proof of loss. Thompson v. Ins. Co., 52 Mo. 469; Hanley v. Ins. Co., 69 Mo. 382. (3) The allegation of the petition that "defendant waived all further payments of premiums" is not denied. Hoffman v. Ins. Co., 56 Mo. App. 309; LaForce v. Ins. Co., 43 Mo. App. 519. (4) Notice to the agent is notice to the company. Bacon on Ben. Soc. and Life Ins., secs. 426 and 433; May on Ins. (3 Ed.), sec. 136; Richards on Ins. (2 Ed.), pp. 21 and 22. Knowledge of the agent of matters within the scope of his employment is in this as in other matters the knowledge of the company. 11 Am. and Eng. Ency. of Law, 338, 339 and note 2. (5) Defendant contends that all evidence as to conversation had between plaintiff and the elder Eames, should have been stricken out. We contend that it should not have been stricken out. First, because it was competent; second, because the objection to it came too late; and third; because defendant expressly asked plaintiff on cross-examination for these conversations, and after getting them and finding them not satisfactory moved to have them stricken out. 1 Am. and Eng. Ency. of Law, 432, and note. (6) In view of the instruction given and the theory on which the case was submitted to the jury, the conversations between the two Eames and the plaintiff were immaterial,

and the refusal to strike them out, if error, was harmless. (7) The granting a new trial because of the affidavit made and filed by attorneys for defendant is: First, a matter peculiarly in the discretion of the trial court; second, the affidavit was not such as the law requires; because it did not state that the verdict was unjust, as expressly required in Culberson v. Hill, 87 Mo. 556, and third, it did not state that it was not cumulative merely (State v. McLaughin, 27 Mo. 112), while as a matter of fact it was merely cumulative. (8) In reply to constitutional question first suggested at the argument in this court we wish only to say: First, the question not having been raised below can not be raised here; second, this is not in the nature of class legislation. It does not apply only to insurance companies. It applies to a particular class of instruments, and not to a particular class of persons. State v. Stone, 118 Mo. 388; Henning v. Ins. Co., 47 Mo. 432.

WM. C. & JAS. C. JONES, WASH ADAMS and GEORGE BURNHAM, JR., for appellant in reply.

(1) The question of unconstitutionality was raised in the lower court; by defendant objecting to the instruction which submitted the question of waiver to the jury; also by defendant objecting to the testimony when offered, and moving to strike it out when received and by renewing the objection in the motion for new trial. This course necessarily raised every point respecting waiver, constitutional and otherwise in the lower court. State ex rel. v. Smith, 141 Mo. 1; Kaukauna Co. v. Green Bay & Canal Co., 142 U. S. 254. (2) To say that the rule applies to a particular class of instruments and not to a particular class of persons, and is therefore not class legislation, is a lame defense of this unreasonable rule. It is the persons who issue insurance policies that are affected by this vicious rule. Can this rule, thus laid down, in the case of McCullough v. Ins. Co.,

·113 Mo. 616, "That waiver must be pleaded in regard to all kinds of actions except on policies of insurance, as the case at bar," be defended at all? Has it any rational basis whatever? Such a classification is plainly unreasonable and wholly unjustifiable. It is classification run mad. If the rule were embodied in a statute, would it not be a violation not only of the Constitution of Missouri but also of the 14th amendment to the Constitution of the United States? State v. Hays, 81 Mo. 574; Railroad v. Ellis, 165 U. S. 155.

MARSHALL, J.—On the third of October, 1890, the defendant, an insurance company on the assessment plan, insured the life of Milton James, of Kansas City, Missouri, in the sum of three thousand dollars, "upon the condition of the payment of nine dollars and eighty-four cents, as a deposit in advance of mortuary premium and dues, within thirty days from the first week day of the months of February, April, June, August, October and December." The plaintiff, the wife of the insured, was the beneficiary. With the exception of two or three times the plaintiff paid the premiums at the office of the local agent in Kansas City, and nearly always to Miss Carrie Dewey, a clerk in said office, who had authority to receive and receipt for them. The policy provided that if the premiums were not paid on or before the day provided therefor in the policy, it should expire and become null and void. The plaintiff testified that she had paid premiums after the expiration of the time specified and as late as the 2d, 3d and 4th of the next month, but she could not specify which they were. Six receipts were produced by plaintiff, five of which showed that the premiums were paid within the required thirty days, and one, for the premium due April 1st, 1892, was paid on the 2d of May, 1892. The receipts for the other payments, made between October, 1890, and June, 1893, were not produced. The premium payable within thirty days after June

1st, 1893, was not paid during that time. Plaintiff says she had always received notices of the assessments prior to that time, but received none for that one, and waited to receive it until July 2d or 3d, and then went to the agent's office, and tendered the premium to Miss Dewey, who told her she would not receive it, and called Mr. F. C. Eames, to whom she again tendered it, but he refused to receive it because it was three days past due. Plaintiff insisted upon paying it because she had paid past due premiums before, which had been accepted without objection, and because she had received no notice. Mr. Eames said, "well, it is different now; that James was in good health then." Miss Dewey told plaintiff they could not receive the premiums on account of Mr. James' health, and spoke of another similar case, and said they were instructed to watch such cases, and that "We watch them like a hawk." Mr. Eames told plaintiff on July 31st "he was no longer the agent of the company, but his son was, and his son was at home sick." Plaintiff went to the son's house to see him about it, but as he had since died, the testimony as to what transpired was excluded. Several times during the month of July plaintiff again offered to pay the premium as did also her friend, Mr. John Larimer, between the 1st and 7th of July, but it was refused. The insured became insane in June, 1893, and was confined in an asylum. He died in February, 1895. No premiums were tendered between July, 1893, and February, 1895. Miss Dewey and Mr. F. C. Eames testified that the plaintiff never tendered the premiums to either of them at any time, and especially not in July, 1893. They both said Mr. Eames ceased to be the agent of the company in March, 1893, and was not in Kansas City between March 12th, 1893, and the spring of 1894, and that they had no conversations with her on the subject at all. Miss Dewey said she was in the office about an hour on the 1st and 3rd of July respectively; that

she left Kansas City for Chicago on the 6th and returned on the 22d of July.

This suit was begun on the 25th of September to recover on the policy. The defense is a non-payment of the premium for June, 1893, and a forfeiture of the policy in consequence. The reply is a general denial. The jury found for the plaintiff in the sum of $2,920, which sum was arrived at by deducting the unpaid premiums from the face of the policy, and adding interest on the balance. The defendant appealed.

## I.

The first objection of defendant is that under a plea of performance the plaintiff was permitted to prove a waiver of the conditions of the policy to be performed by the insured; that is, the payment of the premiums within the prescribed time. This practice is sanctioned in this State. [McCullough v. Ins. Co., 113 Mo. l. c. 616; Ins. Co. v. Kyle, 11 Mo. 278; Nickell v. Ins. Co., 144 Mo. l. c. 432.] The reason for this rule is that: "It is merely evidence of a performance. It is not the case of a substitution of a new contract for an old one; it is not an excuse for non-performance by the prevention or discharge of the defendants; but it is evidence of performance." [NAPTON, J., in Insurance Co. v. Kyle, *supra*.] "The proof of waiver in this case is not an excuse for non-performance at all; it is proof of performance within the meaning of the condition." [NAPTON, J., in Russell & Co. v. Ins. Co., 55 Mo. l. c. 593.] This rule has obtained in this State for such a long period of time that the litigants have a right to assume that it will continue to be followed, notwithstanding it is apparently an exception to the general rules of pleading applicable to other cases.

## II.

The defendant argues, however, that the policy expressly provides that: "No contract, alteration or discharge of contract, waiver of forfeitures, nor granting of

permits of credits shall be valid unless the same shall be in writing, signed by the president or vice-president and one other officer of the association," and hence the agent or local treasurer at Kansas City, could not waive the forfeitures.

This is not a new proposition. It has been much discussed, and the rule is established by the great weight of authority that an agent may waive a forfeiture notwithstanding such a restriction as that above quoted in this policy. This is the result of the adjudications in Alabama, Connecticut, Georgia, Illinois, Indiana, Kansas, Michigan, Louisiana, Missouri, New Hampshire, New York, Tennessee, Texas, Vermont and by the Supreme Court of the United States. [Joyce on Insurance, vol. 2, sec. 1356 and cases cited in note 75; May on Insurance, vol. 1, sec. 135, page 240 and cases cited in note 2.]

In Thompson v. Ins. Co., 52 Mo. l. c. 471, a very similar provision to that contained in this policy was under review, and it was held that the agent had power to waive a forfeiture, and might by a course of dealing create an estoppel to enforce the provision notwithstanding the policy also provided that if the premium was received after it was due it should be considered "as an act of grace or courtesy, and forms no precedent in regard to future payments." In the case at bar the receipts for premiums provided on their face that they should not be valid unless countersigned by the agent in Kansas City. This policy was negotiated and issued by the agent in Kansas City. All of the premiums were paid to him. All of the dealings of the insured and of the plaintiff were with him. He must therefore be regarded as the *alter ego* of the company, and what he did was the same as if the company was present acting for itself. [Nickell v. Ins. Co., 144 Mo. 420.] Under our law a party to a contract in writing may alter, waive, rescind, vary or waive the whole or any provision thereof by a subsequent

parol agreement, or by acts *in pais* amounting to an estoppel. Parties may even become liable for the acts of their agents by their course of business. [Edwards v. Thomas, 66 Mo. l. c. 482.]

### III.

Insurance companies by their course of business, practice and conduct with respect to the payment of premiums, may waive the prompt payment thereof, and can not afterwards take advantage of what would otherwise be available as a defense on the ground of forfeiture. [May on Insurance, vol. 1, secs. 134, 135, and cases cited; Ibid, sec. 137a, pp. 244, 245, citing Van Allen v. Ins. Co., 4 Hun. 413; Ins. Co. v. Tullidge, 39 Ohio St. 240.] Joyce on Insurance, vol. 2, sec. 1356, lays down the rule that: "If an insurance company or its authorized agent, by its habits of business, or by its acts or declarations, or by a custom to receive overdue premiums without objection, or by a custom not to exact prompt payment of the same, or in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy expressly provides for forfeiture for non-payment of premiums as stipulated, and even though it is also conditioned. that agents can not waive forfeitures, and even though the policy provides that receiving overdue premiums is merely an act of courtesy."

The prompt payment of the premiums is for the benefit of the insurer, and may be waived or suspended by it or its agent in express terms or by its course of dealing with the insured.   [Ins. Co. v. Hillyard, 37 N. J. L. 444; Palmer v.

Ins. Co., 84 N. Y. 63; Bouton v. Ins. Co., 25 Conn. 542; McCraw v. Ins. Co., 78 N. C. 149; Ins. Co. v. Adams, 13 Ky. L. Rep. 589; Ins. Co. v. Dowdall, 55 Ill. App. 622; Joyce on Ins., vol. 1, p. 544, sec. 439, and the numerous cases cited in note 145; Ostrander on Ins. (2 Ed.), sec. 335.]

The question of waiver is, like any other fact in the case, essentially a matter for the jury. [Ostrander on Ins. (2 Ed.), sec. 95, p. 302.]

## IV.

We have not experienced nearly so much difficulty with the proposition of waiver generally, as we have with its application to the facts as disclosed by this record. It is conceded that the June premium or assessment was not paid within thirty days after the first week day in June. Plaintiff contends that it was tendered and refused on the 2d and 3d of July, 1893; that the tender was made to Mr. F. C. Eames and to Miss Dewey. They both deny this, and assert that Mr. F. C. Eames ceased to be the agent of the company on March 1st, 1893, went to Chicago, and was not in Kansas City again until the spring of 1894; that Miss Dewey was in the office for an hour on July 1st and 3d each, and went to Chicago on July 6th, 1893, and returned on the 22d. Mr. John Larimer testified that after the payment was refused from Mrs. James, he went to the office of the company, saw Mr. Eames and Miss Dewey and offered to pay the assessment for Mrs. James, and they refused to accept it. The plaintiff testified that between the date of the policy, October 3d, 1890, and July 1st, 1893, she had paid all the premiums, with two or three exceptions, generally to Miss Dewey, and had paid some of them later than the time at which she tendered the June assessment; had paid some of them on the 2d, 3d and 4th of the next month after they fell due; that when the June assessment was refused, she called

attention to the fact that she had paid assessments when they were more than three days past due and they had been accepted, and Mr. Eames said it was different now because Mr. James was not in good health; and Miss Dewey said they had instructions to watch such cases, and they did "watch them like a hawk." Of the fifteen assessments which had been paid prior to June, 1893, only six receipts were produced, five of which showed they were paid before the expiration of the thirty days, and one was paid two days after the limited time had expired. As to when the other nine payments were made, we have only the evidence of the plaintiff, who says she had paid some as late as the 2d, 3d and 4th of the month, after the limited time had expired. Her testimony in this regard is substantially uncontradicted.

Upon this showing plaintiff contends that a *prima facie* case of waiver was made out, which entitled her to go to the jury, and that as there is no substantial countervailing evidence in the case, the jury properly found that, by its course of dealing, practice or conduct, the defendant had waived the condition of the policy requiring prompt payment of the assessments, and returned a verdict in her favor. On the other hand the defendant insists that there is not sufficient evidence in the case to establish a custom or course of dealing, and strenuously argues that as the receipts, introduced in evidence, showed that only one payment had been made after the time limit for payment had expired, one incident could no more create a custom or course of business, than one swallow could make a summer.

It may be conceded that one act waiving a forfeiture would not be sufficient to constitute a course of conduct. In Thompson v. Ins. Co., 52 Mo. l. c. 471, relied on by plaintiff, it appeared that the premium was tendered two days after it was due, and that premiums for previous years had been paid and received weeks after they became due, and the instruction left the question of waiver, by course of business,

to the jury, who found for the plaintiff, and this court affirmed the judgment, saying: "The plaintiff was thus induced to believe, that a failure of strict payment on the day would not prejudice his rights." Attention was also called to the fact that: "The courts have become more liberal in their construction of those sort of stipulations in policies of insurance." Thus, there was presenting evidence of more than one act, and the same is true here, for we can not overlook the testimony of the plaintiff herself; and the receipts, not covering the whole period, do not controvert or contradict her testimony, nor raise such a suspicion in reference to it as to warrant its total rejection, but on the contrary, rather give color to it, by showing that she did pay and the company did receive one assessment after it was past due—and if one, why not more, as long as the insured was in good health, and it was the premium the company wanted? Our law does not require the testimony of any given number of witnesses to establish a fact, in cases of this character. The plaintiff's evidence in respect to the course of business stands alone. Neither Mr. Eames nor Miss Dewey were even examined on this subject. They contradicted her concerning the tender of the June assessment, and the jury must have believed the plaintiff, but they did not contradict her about the payment of any of the premiums, and confined their testimony to the six receipts. It may be that no other witness knew when she had paid the previous assessments. Only the plaintiff and Mr. Eames and Miss Dewey would be likely to know anything about that matter, and this may account for the fact that she stands alone in her testimony in this regard. But, however, that may be, the fact remains that she so testified—she is not contradicted—she is not impeached. If she told the truth, she was entitled to a verdict. Whether she told the truth, was for the jury to say. They believed her. It is not our practice to set aside a verdict when there is any evidence

to support it, unless it shows on its face that it must have been the result of passion, prejudice or misconduct of the jury, and it is not enough that there is an insufficiency of evidence; a case will not be reversed unless there is no evidence tending to establish the fact found by the jury. [Moore v. Railroad, 73 Mo. 438; Bray v. Kremp, 113 Mo. 552; State v. Richardson, 117 Mo. 586; Grove v. Kansas City, 75 Mo. 672; Pierce v. Chamberlain, 82 Mo. 618; Eswin v. Railroad, 96 Mo. 290; Williams v. Railroad, 109 Mo. 475; State to use v. Brokerage Co., 85 Mo. 411; Ettlinger v. Kahn, 134 Mo. 492; Vautrain v. Railroad, 78 Mo. 44; Rosecrans v. Railroad, 83 Mo. 678; Manion Wreck. Co. v. Carreras, 26 Mo. App. 229.] The fact that the verdict is not such as the appellate court would have reached upon the conflicting evidence adduced, will not warrant a reversal. [Davis v. Railroad, 46 Mo. App. 180.] And the appellate court, in determining whether the evidence is sufficient to support a verdict for the plaintiff will, laying aside defendant's controverting evidence, assume that plaintiff's evidence is true, and will give to it every favorable inference which may be reasonably and fairly drawn from it. [Cohn v. Kansas City, 108 Mo. 387.]

Gauged by these precedents and measured by these rules, we are constrained to hold that plaintiff made out a *prima facie* case of waiver, and the verdict of the jury can not be disturbed on that ground.

## V.

The instructions fairly put the case to the jury in accordance with the law as hereinbefore expressed, and hence there was no error in this particular.

## VI.

The defendant alleges error in not permitting it to open and conclude the case. In view of what is herein said with

reference to the admission of evidence of waiver under a plea of performance, the burden of proof was clearly upon the plaintiff, and this assignment of error need not be further dwelt upon.

## VII.

In its motion for new trial defendant alleges that, "since the trial defendant has discovered new and important evidence of which it had no knowledge or information at the trial, and the importance or necessity of which was not known to defendant because it was not advised by the pleadings of the issue on which the case was finally submitted to the jury." The evidence here alluded to is shown by the affidavits filed in support of the motion, to consist of the facts relating to the time the several premiums were received by the defendant company at its office in New York, as shown by the books of the company and the reports of the agent of the company in Kansas City, and of the methods employed by the company in sending out notices of assessments on the first week day of the respective months they fell due, and of the affidavit of Miss Dewey, showing when assessments numbered 56 to 67 were paid, and the affidavit of Mr. F. C. Eames to the same effect; of an affidavit of Mrs. Louisa M. Veits that F. C. Eames roomed at her house in Chicago from March 2d, 1893, for seven months thereafter, and that Miss Dewey likewise roomed at her house for two months commencing July 6th or 7th, 1893; and finally, an affidavit of counsel for defendant, in which it is stated that as it did not appear from the pleadings that plaintiff would rely upon any custom or waiver of prompt payment, they "did not have and produce the testimony which is embraced in the affidavits hereto attached and filed in this case."

It is manifest that none of this evidence is newly discovered evidence, which, by the exercise of diligence, the defendant was unable to obtain in time for the trial. The

evidence as to the time of payment of the several assess-
ments and the method of sending notices, was in defend-
ant's possession at all times, and could have been secured
before the trial when defendant took depositions in New
York. The evidence of Mrs. Veits as to Mr. Eames and
Miss Dewey's presence in Chicago was cumulative of their
testimony to the same effect. The facts sworn to by Miss
Dewey after the trial, could have been brought out at the
time as she was present in court and testified in the case.
Those contained in Mr. Eames' affidavit could have been
brought out when his deposition was taken before the trial.
The affidavit of counsel shows very clearly that the reason
none of this was done, was because they did not think it
would be necessary, as they did not expect proof of waiver
would be admitted under a plea of performance. In this they
were, of course, laboring under a misapprehension of the
law in this State. The circuit court committed no error in
refusing to grant a new trial for these reasons. [Mayor,.
etc. v. Burns, 114 Mo. 426; State v. Potter, 108 Mo. 424;.
State v. Keith, 53 Mo. App. 383; Dean v. Chandler, 44 Mo.
App. 338; Macklin v. Railroad, 45 Mo. App. 82; State v.
Campbell, 115 Mo. 391; State v. Luke, 104 Mo. 563; State
v. Myers, 115 Mo. 394; State v. Cantlin, 118 Mo. 100, and
especially State v. Ray, 53 Mo. 345.] Aside from this, the
defendant did not make any claim in the circuit court that
it was surprised by the ruling of the court on the question
of waiver, and made no effort to have the hearing of the
cause postponed until it could get this evidence from its New
York office and employees [Schuchman v. Heath, 38 Mo.
App. 280], but on the contrary took its chances before the
jury, lost, and is now outside of the pale of relief on this
ground.

## VIII.

No protection of the Constitution was claimed in the
circuit court with respect to the rule as to proof of waiver in

insurance cases, and hence none can be claimed here. [Vaughn v. Railroad, 145 Mo. 57; Parlin & Orendorff v. Hord, 145 Mo. 117; Hulett v. Railroad, 145 Mo. 35; Sayward v. Denny, 158, U. S. l. c. 184; Oxley Stave Co. v. Butler Co., 166 U. S. 648.]

Finding no reversible error in the record, the judgment of the circuit court is affirmed.    All concur.